# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DYNO NOBEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-1689 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| UNITED STEEL WORKERS | ) | |
| AFL-CIO-CLC UNION 10-59, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

### I. **MEMORANDUM**

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 24) will be granted and Plaintiff's Cross-Motion for Summary Judgment (Doc. 27) will be denied. In addition, Defendant's request for an award of attorney's fees will be denied.

### **BACKGROUND**

In this civil action, Plaintiff Dyno Nobel, Inc. ("Dyno Nobel") seeks to vacate an arbitration award which reinstated Christian Ruby to his job with back wages and benefits. Ruby was discharged pursuant to a policy in Dyno Nobel's employee handbook after receiving his third disciplinary warning within 12 months. Under the terms of the parties' collective bargaining agreement ("CBA"), Dyno Nobel was authorized to "make and enforce reasonable shop rules and regulations" and "suspend, discipline, [or] discharge for cause." (*See* Compl. Ex. A, Collective Bargaining Agreement, Art. III, Doc. 1-2.) Ruby's third and final disciplinary warning came after Dyno Nobel's plant manager allegedly discovered him sleeping on the job -- conduct which would "ordinarily warrant corrective actions" according to the employee handbook. (*See* Compl. Ex. B (hereafter, "Arbitration Decision") at 8, Doc. 1-4.) After the Defendant Union grieved Ruby's termination, Arbitrator Christopher Miles found that Dyno

1

Nobel had failed to establish "cause" for Ruby's discharge because the Company had not established, by clear and convincing evidence, that Ruby had in fact been asleep while working. Consequently, Arbitrator Miles ordered that Ruby be reinstated and made whole for his lost wages and benefits.

**ANALYSIS**

    **A. <u>Dyno Nobel's Challenges to the Arbitration Award</u>**

This Court's authority to disturb a labor arbitration award is extremely limited. Federal courts must generally enforce an arbitration award "if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects a manifest disregard of the agreement, totally unsupported by principles of contract construction." *Exxon Shipping Co. v. Exxon Seamen's Union ("Exxon I")*, 993 F.2d 357, 360 (3d Cir.1993) (citation and internal quotation marks omitted). *See also Giant Eagle, Inc. v. United Food & Commercial Workers Union Local 23,* 547 F. App'x 106, 108 (3d Cir. 2013) (*quoting Exxon I*). "[A]s long as the arbitrator's award draws its essence from the [CBA] and is not merely [the arbitrator's] own brand of industrial justice, the award is legitimate." *Citgo Asphalt Refining Co. v. Paper, Allied–Indus., Chem., and Energy Workers Int'l Union Local No. 2–991*, 385 F.3d 809, 816 (3d Cir. 2004) (*quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987))(alterations in the original). Based on the circumstances of this case, the Court is satisfied that the arbitrator's award drew its essence from the parties' CBA.

An award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *Brentwood Med. Assoc. v. United Mine*

*Workers of Am*, 396 F.3d 237, 241 (3d Cir. 2005) (emphasis in the original). Here, the arbitrator framed the issue to be resolved as "whether the Company had just cause to discharge Mr. Ruby," (Arbitration Decision at 7), and he cited the CBA's "cause" provision at various points throughout his decision. (*Id*. at pp. 5, 7, 10-11.) Because the CBA permitted Dyno Nobel to enforce "reasonable shop rules and regulations," and because Ruby's discharge was based upon such a rule, the arbitrator also referenced the portions of Dyno Nobel's handbook that were relevant to Ruby's third and final disciplinary warning. Notably, Ruby denied the alleged misconduct that served as the basis for the dispositive warning. Neither the CBA nor (apparently) the "Three Written Warnings Policy" prescribed a particular standard of proof in determining when "cause" exists for discipline or discharge,[1] so the arbitrator implicitly construed these documents as requiring clear and convincing evidence. Given these circumstances, it is evident that the arbitration award draws its essence from the collective bargaining agreement.

In challenging the award, Dyno Nobel primarily takes issue with the arbitrator's use of the "clear and convincing evidence" standard and the manner in which he framed the relevant issue. According to Dyno Nobel, the only issue in contention was whether the company had cause to discipline Ruby for the third time. It argues that the arbitrator should not have required "clear and convincing" evidence to support the third disciplinary warning, because there is no evidence that this standard was utilized in connection with Ruby's first two disciplinary warnings. By failing to apply a uniform standard of proof, Dyno Nobel argues, and by improperly focusing on the issue of termination rather than discipline, the arbitrator errantly treated the third incident as a stand-alone, terminable event, contrary to the terms of the CBA and

---

[1] The Court notes that the employee handbook setting forth the "Three Written Warnings Policy" is not part of the evidentiary record before this Court; however, there has been no contention by Dyno Nobel that the handbook called for a particular standard of proof in establishing misconduct that could serve as grounds for corrective action.

3

Dyno Nobel's "Three Warnings Policy." According to Dyno Nobel, this shows that the arbitrator based his award on his own personal considerations of fairness and equity rather than on the parties' collective bargaining agreement.

The Court finds no merit in this argument. First, the Court finds nothing inappropriate with the manner in which Arbitrator Miles framed the matter for resolution. Federal courts "give deference to an arbitrator's interpretation of the issue submitted." *Giant Eagle, Inc. v. United Food & Commercial Workers Union Local 23*, 547 F. App'x 106, 110 (3d Cir. 2013) (citation omitted). Although Arbitrator Miles characterized the relevant issue as "whether the Company had just cause to discharge Mr. Ruby" (Arbitration Decision at 7), he also recognized that Ruby was terminated because he was issued a third disciplinary warning within a 12-month period; accordingly, Arbitrator Miles appropriately observed that Dyno Nobel had "the burden of proving there was just cause *to issue the third written warning*." (*Id.* (emphasis added).) Arbitrator Miles then recognized that the more specific "question remaining" was "whether the Company established by clear and convincing evidence that Mr. Ruby was asleep while on duty and operating the Front End loader…" (*Id.* at 7-8.) This was perfectly appropriate given that, at the arbitration hearing, both Ruby and the Union contested Dyno Nobel's underlying assertion that Ruby had been asleep on the job.

Second, the Court does not agree with the premise that the arbitrator improperly treated Ruby's final disciplinary warning as the *sole* reason for his discharge by supposedly requiring a higher evidentiary burden for that offense than was utilized in relation to the previous warnings. As Dyno Nobel admits in its complaint – and as the arbitration decision makes clear, Ruby's first two warnings were not ultimately challenged by the Union (*see* Compl. ¶ 25, Doc. 1; Arbitration

Decision 5-6, Doc. 1-4), so there is no basis from which this Court can conclude that a lesser standard of proof was applied or recognized as appropriate in relation to those prior incidents.

Third, the Court does not agree that the arbitrator imposed a higher evidentiary burden than the "for cause" standard that was manifestly bargained for under the terms of the CBA, as supplemented by the subject disciplinary policy. At bottom, Dyno Nobel's argument rests on a conflation of two distinct concepts. On one hand, there is no dispute for present purposes that sleeping on the job constitutes "cause" for a disciplinary warning. However, establishing that a particular type of misconduct constitutes "cause" for discipline is different from determining the amount of proof needed in order to establish that such misconduct occurred. Here, there is no contention by Dyno Nobel that its "Three Warnings Policy" called for a particular standard of proof in determining that misconduct warranting "corrective action" had occurred, and the CBA similarly failed to specify the level of proof needed to establish "cause" for discipline or discharge. Because there was a factual dispute as to whether Ruby engaged in the misconduct that formed the basis of his third disciplinary write-up (and resulting termination), and because the CBA and subject policy were silent as to the level of proof required to establish the misconduct, it necessarily fell to Arbitrator Miles to make that determination. Accordingly, this Court perceives no basis for determining that the arbitrator, by employing a "clear and convincing evidence" standard, manifestly disregarded the terms of the CBA or the subject policy or imposed his own brand of "industrial justice" on the parties.[2]

---

[2] Dyno Nobel cites numerous court decisions where arbitration awards have been vacated, supposedly under circumstances similar to those involved here. The Court finds that each of the cited cases is materially distinguishable from the case at bar because each involved situations where the predicate misconduct had been established as a factual matter; therefore, no dispute existed as to the relevant standard of proof, and no valid grounds existed under the governing CBA for the arbitrator's decision to overturn the employee's discharge. In *Merck & Co., Inc. v. Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union,* 246 F. App'x 97 (3d Cir. 2007), for example, the court affirmed the vacation of an arbitration award concerning an employee who had been terminated after an investigation showed that he had falsified his timecard records. The court held that the arbitrator had overstepped the limits of his authority by converting the termination to a suspension because this action directly

As to this issue, the Court agrees with the Union that *Exxon Shipping Co. v. Exxon Seaman's Union ("Exxon III"),* 73 F.3d 1287 (3d Cir. 1996), is instructive. In that case, Alan B. Cash, an Exxon employee, was terminated from his employment for refusing to submit to drug testing. Following grievance proceedings, an arbitrator found that the company lacked "cause" to require Cash to undergo testing and awarded him a reinstatement. On appeal from the district court's order upholding the arbitration award, Exxon argued that the arbitrator had impermissibly inserted a "clear and convincing" evidentiary standard into the "cause" analysis. The Third Circuit Court of Appeals rejected this argument and affirmed the district court's enforcement of the award. In doing so, the court expressed agreement with the union's position that defining the term "cause" and identifying the requisite standard of proof were determinations within the province of the arbitrator. *Id*. at 1295. The court explained that:

> [t]he parties bargained for an arbitrator to interpret their contract. The Exxon Drug and Alcohol Policy states: "[t]he Company ... has the right to require employees to submit to medical evaluation or alcohol and drug testing where cause exists to suspect alcohol or drug misuse." … The term "cause" is ambiguous. Where a contractual ambiguity exists it is within the province of the arbitrator to interpret the ambiguous phrase. … Although the Chairman's opinion may not be a model of clarity, it is evident that he ultimately concluded that Exxon lacked "cause" to require Cash to submit to a drug test. That Exxon now disagrees with that conclusion is not a ground for vacating his decision. Exxon

---

contradicted a joint statement supplementing the parties' CBA which expressly provided that over-charging work hours would lead directly to discharge. *Id.* at 102. Similarly, in *SEIU Healthcare Mi. v. St. Mary's Acquisition Co., Inc.,* No. 09-13215, 2010 WL 2232218, *3-4 (E.D. Mich. May 27, 2010), the arbitrator found the employee guilty of the dischargeable offense of sleeping on the job, but he nevertheless concluded that the penalty of discharge was inappropriate in light of mitigating factors, contrary to his prescribed authority under the CBA. *Contico Int'l, Inc. v. Local 160, Leather Goods, Plastics and Novelty Workers, AFL-CIO,* 738 F. Supp. 1262 (E.D. Mo. 1990), likewise involved a case wherein the arbitrator found the employee guilty of the terminable offense of sleeping on the job. Despite the fact that the applicable employment policy called for automatic termination, the arbitrator exceeded his authority under the CBA by improperly determining that discharge was too harsh a penalty in light of certain actions of the employer that had contributed to the employee's misconduct. *See* 738 F. Supp. at 1268-69. *See also Int'l Bhd. of Elec. Workers, Local 429 v. Toshiba Am., Inc.,* 879 F.2d 208 (6th Cir. 1989) (holding that, once the union stipulated that employees engaged in misconduct warranting discipline, the arbitrator lacked the authority to overturn the employer's discharge decision); *Int'l Bhd. of Teamsters, Local No. 120 v. Univ. of St. Thomas,* 94 F. Supp. 346, 350-51 (D. Minn. 1994) (vacating an arbitration award that reinstated a discharged employee who had been found sleeping on the job where the arbitration board, despite acknowledging that sleeping on the job normally qualifies as a "legitimate business reason for termination," determined that termination was not legitimate as to the subject employee because of considerations that had no basis in the parties' collective bargaining agreement).

could have defined "cause" more specifically in its policy, or could have bargained with the union to remove cases arising under its drug policy from the jurisdiction of arbitrators altogether. It did not, and therefore may not now be heard to complain that the arbitrator lacked authority to make determinations that the company policy and the parties' agreement left open for an arbitrator's judgment.

*Id.* at 1295-96 (internal citations omitted).

As in *Exxon,* the parties to this case could have specified in the CBA the level of proof required in order to establish "cause" for discipline or termination. However, they did not do so and, lacking further guidance from the CBA or the subject disciplinary policy, Arbitrator Miles had the responsibility to make this legal determination himself. Moreover, even if the arbitrator committed error in this regard, this Court lacks the power to vacate his award on that basis. *See Citgo Asphalt Refining Co.,* 385 F.3d at 815-16 ("[W]e do not review an arbitrator's award for legal error."); *Exxon III,* 73 F.3d at 1295 ("In considering Exxon's challenge to the arbitral award, we do not review for legal error, but are limited to assessing whether the award 'draw[s] its essence from the collective bargaining agreement.'") (citation omitted) (alteration in the original); *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters,* 969 F.2d 1436, 1441 (3d Cir. 1992) ("[A]s long as the arbitrator's award is drawn from the essence of the collective bargaining agreement, a court may not vacate it even if the court finds the basis for it to be ambiguous or disagrees with its conclusions under the law.").

Dyno Nobel's second basis for challenging the arbitration award concerns the Union's statement in its grievance report that "Ruby was terminated after not having a break on his hours 8 [through] 12 of [overtime] & dozed off in the [front end] loader." (Compl. Ex. B, Doc. 1-3.) Dyno Nobel complains that the arbitrator acknowledged, but disregarded, this "admission"[3] by

---

[3] Dyno Nobel does not appear to be arguing that the statement about Ruby "dozing off" constitutes a binding judicial admission which compelled the arbitrator to find that Ruby was asleep. In any event, however, this Court would not be inclined to view the grievance report as a binding admission given that: (i) the report was not signed or

the Union that Ruby "dozed off" while working. According to Dyno Nobel, Arbitrator Miles engaged in a "torturous analysis" of the evidence in concluding that the Company had failed to prove Ruby's misconduct, effectively requiring Dyno Nobel to prove "scientifically" that Ruby was asleep before having a justification for issuing a written discipline. (Pl.'s Br. Supp. Mot. Summ. Judg. 9, Doc. 29.) As a result, Dyno Nobel claims, the arbitrator's fact finding does not meet the test of fundamental rationality and displays a manifest disregard of the parties' CBA. (*Id.* at 9; Pl.'s Resp. to Def.'s Mot. Summ. J. 4-5, Doc. 38.)

The Court finds no basis in this argument for disturbing the arbitration award. "The Supreme Court has made clear that findings of fact and inferences to be drawn therefrom are the exclusive province of the arbitrator." *Exxon III*, 73 F.3d at 1297 (*citing United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 44 (1987)). An arbitration award can be vacated only where "it is entirely unsupported by the record" or "reflects a manifest disregard of the [CBA]." *Citgo Asphalt Refining Co.,* 385 F.3d at 816 (citing *Exxon III,* 73 F.3d at 1291) (internal quotation marks omitted). In this case, the Court cannot say that the arbitrator's findings of fact are unsupported by the record. To prove that Ruby was sleeping on the job, Dyno Nobel relied on: (i) hearsay statements of three individuals who failed to testify at the hearing, (ii) the language in the grievance report, (iii) the testimony of its plant manager, who admittedly observed Ruby only for a matter of seconds, and (iv) certain circumstantial evidence. The Union, on the other hand, relied on contradictory circumstantial evidence as well as the testimony of Ruby, who stated that he was not asleep but, rather, slumped down in his seat with

---

completed by Ruby, (ii) the report does not purport to attribute the statement in question to him personally, (iii) the circumstances under which the alleged admission was made are unclear; and (iv) Ruby clearly denied the act of falling asleep at work at the time of the arbitration hearing. Moreover, even if it could be said that the arbitrator committed legal error by failing to treat the grievance report as a binding judicial admission, this Court could not vacate the arbitration award on that basis. *See Citgo Asphalt Refining Co.*, 385 F.3d at 815-16 (federal courts do not review arbitration awards for legal error).

his head down, looking under the skirting of the loader to watch the flow of product into the bins that were being filled. In contradiction to the plant manager's testimony that he had observed Ruby sleeping, Ruby testified that he was wearing safety glasses with side pieces at the time, which would have precluded the plant manager from observing whether his eyes were closed. In crediting Ruby's testimony and finding, as a factual matter, that Ruby was not actually asleep on the job, the arbitrator acted well within the scope of his authority. *See Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509 (2001) ("When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award.") (*quoting Misco*, 484 U.S. at 39).

Dyno Nobel insists that it is not challenging the arbitrator's fact-finding, but rather, the analysis he used in making his credibility determination. According to Dyno Nobel, the arbitrator completely disregarded the evidence that conflicted with his ruling in order to reach a fundamentally irrational result which should now be vacated. This Court does not agree. As the Third Circuit Court of Appeals has recognized, "an arbitrator's decision need be neither wise nor internally consistent." *Exxon III,* 73 F.3d at 1297. "In fact, arbitrators have no obligation to explain their reasons for an award or even to write an opinion unless the contract so requires." *Id.* (citing authority). Where, as here, no fraud or dishonesty is alleged, Dyno Nobel's claim of irrational factfinding "is hardly a sufficient basis for disregarding what the [arbitrator] determined to be the historical facts." *Misco, Inc.,* 484 U.S. at 39. Because the arbitrator's decision easily satisfies a standard of "minimal rationality," *Exxon III,* 73 F.3d at 1297, this Court will not disturb the award.

Dyno Nobel also contends that the arbitrator based his decision on his personal disagreement with Dyno Nobel's forced overtime policy, which was a bargained-for condition of employment. In basing his award on this illegitimate consideration, Dyno Nobel argues, the arbitrator showed manifest disregard of the CBA and essentially dispensed his own brand of industrial justice. Without delving into the specifics of the arbitrator's reasoning,[4] we simply note that Dyno Nobel's objection is not evident to this Court based on its review of the ruling. The suggested inference that the arbitrator based his ruling on his own personal disagreement with Dyno Nobel's forced overtime policy is purely speculative and provides no basis for vacating the award.

Finally, Dyno Nobel argues that the arbitrator's award must be vacated because allowing Ruby to return to work after sleeping on the job would conflict with the public policy interest in maintaining a safe workplace, particularly where (as here) explosives and large industrial equipment are concerned. *See Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S.P.S.*, 272 F.3d 182, 185 (3d Cir. 2001) (recognizing the rule that an arbitration award may be vacated if the arbitrator's interpretation of the collective bargaining agreement was "contrary to public policy") (internal quotation marks and citation omitted). This "public policy" exception to the enforcement of arbitration awards is "slim indeed," *Service Employees Int'l Union Local 36, AFL-CIO v. City Cleaning Co., Inc.,* 982 F.2d 89, 92 (3d Cir. 1992), but – more to the point – this particular objection has merit only if, as a factual matter, Ruby was asleep on the job. As noted, Arbitrator Miles found that there had been a failure of proof relative to the allegation that

---

[4] Courts generally focus only on the result when determining whether an arbitration award draws its essence from the agreement, rather than delving into the arbitrator's reasoning. *See, e.g., United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) (observing that, if courts require arbitration opinions to be free of all ambiguity, this "may lead arbitrators to play it safe by writing no supporting opinions"); *Mich. Family Res., Inc. v. Serv. Employees Int'l Union,* 475 F.3d 746, 755 (6th Cir. 2007) ("[I]t is assuredly true that we review outcomes, not opinions, while performing the exceedingly deferential task of considering whether to vacate an arbitration award.").

10

Ruby was asleep on the job. For the reasons previously discussed, this Court lacks any valid basis for disturbing that finding. Accordingly, the public policy exception cited by Dyno Nobel is inapplicable to this case. *Cf. Exxon III,* 73 at 1297 ("[B]ecause we accept the arbitrator's finding that Cash was ordered to submit to a [drug] test without reasonable cause, his reinstatement does not offend public policy.").

For the reasons previously stated, this Court is satisfied that the arbitrator's award "drew its essence" from the parties' collective bargaining agreement. Accordingly, the Court lacks authority to vacate the award. *See Brentwood Medical Assoc.,* 396 F.3d at 241 ("Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.").

## B. The Union's Request for Attorney's Fees

The Court must next address the Union's request for an award of attorney's fees. Where, as here, there has been an appeal from an arbitration award, the district court may award attorneys' fees if the employer acted without justification or did not have a reasonable chance to prevail. *Chauffeurs, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Bros. Co.,* 625 F.2d 1092, 1094 (3d Cir. 1980); *Wilkes Barre Hosp. Co., LLC v. Wyo. Valley Nurses Ass'n PASNAP,* 453 F. App'x 258, 261 (3d Cir. 2011). Although the Court finds no merit in Dyno Nobel's appeal, the Court concludes, based on the record before it, that the appeal was not frivolous or litigated in bad faith. Accordingly, the Union's request for counsel fees will be denied.

## II.     ORDER

Consistent with the foregoing, Defendant's Motion for Summary Judgment (**Doc. 24**) is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment (**Doc. 27**) is **DENIED**.  In addition, Defendant's request for an award of attorney's fees is **DENIED**.

IT IS SO ORDERED.


December 16, 2014                                                       s/Cathy Bissoon
                                                                        Cathy Bissoon
                                                                        United States District Judge


cc (via ECF email notification):

All Counsel of Record